IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOY SALAZAR,<br><br>     Plaintiff,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>     Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  2:10CV1265DAK<br><br>Judge Dale A. Kimball |

   This matter is before the court on Defendant State Farm Mutual Automobile Insurance Company's Motion for Partial Summary Judgment and Plaintiff Joy Salazar's Motion for Partial Summary Judgment.  On August 22, 2012, the court held a hearing on the motions.  At the hearing, Plaintiff was represented by Randall K. Spencer and Levi S. Adams, and Defendant was represented by Paul M. Belnap and A. Joseph Sano.  After hearing oral argument, the court took the motions under advisement.  The court has carefully considered the pleadings, memoranda, and exhibits submitted by the parties, as well as the law and facts relevant to the pending motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

BACKGROUND

This case arises out of a dispute between an insured and her insurer over underinsured motorist ("UIM") coverage.  Utah Code Annotated Section 31A-22-305.3 ("UIM Statute") provides that "the limits of underinsured motorist coverage shall be equal to the lesser of the limits of the insured's motor vehicle liability coverage or the maximum underinsured motorist coverage limits available by the insurer under the insured's motor vehicle policy, unless the insured purchases coverage in a lesser amount by signing an acknowledgment form that: (i) is filed with the department; (ii) is provided by the insurer; (iii) waives the higher coverage; (iv) reasonably explains the purpose of underinsured motorist coverage; and (v) discloses the additional premiums required to purchase" the required underinsured motorist coverage.  *Id.* § 31A-22-305.3(2)(b).

Salazar obtained motor vehicle insurance coverage through State Farm.  Her policy initially provided liability coverage of $50,000 each person/$100,000 each accident.  The policy also provided UIM coverage, designated by the symbol "W," in the amount of $10,000 each person/$20,000 each accident.

On June 17, 2009, Salazar went to her State Farm agent's office to notify him of a change of address.  While at his office, Salazar decided to increase her insurance limits based on a letter she had received from her agent.  During her visit, Salazar increased her liability coverage limits from $50,000 each person/$100,000 each accident to $100,000 each person/$300,000 each accident.

At the time that she increased her liability coverage, Salazar was presented with a State Farm form entitled, "Utah Uninsured and Underinsured Motor Vehicle Coverages

(Acknowledgment of Coverage Selection or Rejection)" ("Form").  State Farm's Form is on file with the Department of Insurance and explains that Utah law requires uninsured motorist ("UM") and UIM coverage to equal the amount of liability coverage unless the insured elects otherwise. The Form then defines UM coverage and UIM coverage as follows:

> Uninsured motor vehicle coverage provides protection to you and others in your motor vehicle in an accident caused primarily by the fault of another party where the other party has no liability insurance to compensate for your bodily injuries.  Underinsured motor vehicle coverage provides protection to you and others in your motor vehicle in an accident caused primarily by the fault of another party where the other party has liability insurance but not enough to compensate for your bodily injuries.

After these definitions, the Form provides an election section for UM coverage and then an election section for UIM coverage.  For each type of coverage, the insured may reject any such coverage or choose between several different levels of coverage.  The Form also identifies the cost for each level of each type of coverage.

On Salazar's Form, she elected $50,000 each person/$100,00 each accident coverage for UM coverage and $10,000 each person/$20,000 each accident for UIM coverage.  These elections were the same as Salazar's prior limits for these types of coverage.

The parties dispute the exchange between Salazar and her agent's assistant, Rebecca Poch, with respect to filling out the Form.  Salazar claims that she was told the Form acknowledged that her liability limits were being increased to $100,000/$300,000.  Salazar asserts that she did not read the Form and had no knowledge that it related to UIM coverage.  In her deposition, Salazar testified, "I do not recall having the uninsured and the underinsured explained to me in such a manner that I would have been able to understand exactly what it

3

meant so that I could increase those limits as well."

Poch testified in her deposition that she does not specifically recall her interactions with Salazar because it was a routine occurrence that happens several times a day. However, she testified as to her procedures for such transactions. Poch testified that it was her practice to inform the insured that the Form was required by Utah law because they were changing their liability coverage amount and choosing to keep their UM and/or UIM insurance coverage at the same limit, which was lower than their current liability. Poch stated that she would tell them what coverage they had and mark it on the Form. She would explain the difference between UM coverage and UIM coverage. Then, she would give the person time to look over the Form and see if they wanted to keep the same limits or change them. She testified that most people would take time to look at the Form, see their limits, and then sign it.

While defining UM and UIM coverage in her deposition, Poch got the terms and definitions switched. When she was asked about that later in her deposition, she acknowledged that she had made a mistake. The parties dispute whether this demonstrates a misunderstanding of the terms.

Although Poch had notes from her interactions with Salazar, they did not refresh her recollection of her interactions with Salazar and they did not state anything specifically related to their interactions while filling out and signing the Form. The notes merely state: "She came for address change and renter's certificate. While she was here she said she should change her limits. She said she got the letter and understood the importance. I gave her a quote and she decided to do 100/300/50. I had her sign selection rejection."

Salazar had maintained separate coverage amounts for her liability, UM, and UIM

coverage for six years.  Every six months when she received her renewal, State Farm included a statement on the renewal form that read: "Please read the enclosed insert titled IMPORTANT NOTICE REGARDING UNINSURED AND UNDERINSURED MOTOR VEHICLE COVERAGES.  If you want to increase your coverage of [UM] or [UIM] limits to equal your Bodily Injury Liability Coverage limits or $250,000/$500,000 (whichever is less), please contact your agent."  The booklet enclosed with the renewal forms provided the same information regarding UM and UIM coverage as contained on State Farm's Form.  The booklet explained the requirements of Utah law, defined UM and UIM coverage, and provided the costs for each level of each type of coverage.  Salazar testified that she never paid attention to the statement on the renewal letter or the enclosed booklet.  Her general practice was to file the materials and dispose of them after a year.

On February 19, 2010, Salazar was involved in a motor vehicle accident in Provo, Utah, in which the other driver ran a stop sign and collided with Salazar's vehicle.  Salazar alleges that she sustained personal injuries in the accident.  The other driver carried liability insurance coverage in the amount of $25,000.  On July 23, 2010, the other driver's insurer tendered the full $25,000 to Salazar.  Salazar then made a claim to State Farm for UIM benefits.  State Farm tendered the full policy limit of $10,000 to Salazar.  Salazar alleges that her damages exceed the amount of her UIM coverage limit.

Salazar filed this lawsuit against State Farm, alleging that when she increased her liability coverage, her agent's assistant did not give her an opportunity to select different amounts of UIM coverage and did not advise her of the consequences of having UIM coverage in an amount less than her policy liability limit.  Salazar claims that had she been reasonably informed, she would

have selected coverage matching her liability limits.

## DISCUSSION

The motions for partial summary judgment require the court to determine whether Salazar was reasonably informed as to the purpose of UIM coverage when she signed State Farm's UIM form and selected UIM coverage in an amount less than her bodily injury liability coverage. State Farm moves for partial summary judgment arguing that this court can decide as a matter of law that its Form provided Salazar with the information Utah's UIM Statute requires for consumers to make an informed and intelligent decision about UIM coverage. Conversely, Salazar moves for partial summary judgment arguing that, even viewing the facts in a light most favorable to State Farm, State Farm's verbal communications and Form failed to comply with Utah's UIM Statute.

Utah's UIM Statute provides that "the limits of underinsured motorist coverage shall be equal to the lesser of the limits of the insured's motor vehicle liability coverage or the maximum underinsured motorist coverage limits available by the insurer under the insured's motor vehicle policy, unless the insured purchases coverage in a lesser amount by signing an acknowledgment form that: (i) is filed with the department; (ii) is provided by the insurer; (iii) waives the higher coverage; (iv) reasonably explains the purpose of underinsured motorist coverage; and (v) discloses the additional premiums required to purchase" the required underinsured motorist coverage. Utah Code Ann. § 31A-22-305.3(2)(b).

Utah courts have recently addressed the requirements of Utah's UIM Statute. *Lopez v. United Automobile Ins. Co.*, 2012 UT 10 (Utah Feb. 24, 2012); *Lopez v. United Automobile Ins.*

*Co.*, 222 P.3d 1192 (Utah Ct. App. 2009).[1] In *Lopez*, the Utah Supreme Court addressed what constitutes a "reasonable explanation" of UIM coverage under Utah's UIM Statute. 2012 UT at ¶ 1. The insured in *Lopez* declined all UIM coverage and signed a waiver form with the following explanation: "Uninsured/Underinsured Motorists Bodily Injury Coverage provides payment of certain benefits for damages caused by the owner or operator of uninsured/underinsured motor vehicles because of bodily injury, sickness, disease or death." *Id.* at ¶¶ 3-4.[2]

In determining whether the insurer's waiver form provided enough information to allow consumers to make an informed decision regarding UIM coverage, the *Lopez* court reiterated that courts construe insurance contracts "by considering their meaning to a person of ordinary intelligence and understanding," and "any ambiguity or uncertainty in the language . . . must be resolved in favor of coverage." *Id.* at ¶ 17. The court concluded that the insurer's waiver form failed to provide the required reasonable explanation because "(1) it does not define the term 'underinsured,' (2) it fails to differentiate between 'underinsured' and 'uninsured,' and (3) it does not adequately explain the benefits of UIM coverage or when they apply." *Id.* at ¶ 18.

In *Lopez*, the insurer argued that its form provided a reasonable explanation "because it contained language that mirrored the statutory definition of UIM coverage." *Id.* ¶ 13. The court rejected the insurer's argument, finding that "the statutory definition is insufficient to adequately

---

[1] In this case, the parties briefed State Farm's motion prior to the Utah Supreme Court's ruling and cited to the Utah Court of Appeals' decision. However, Salazar's motion for partial summary judgment was briefed after the Utah Supreme Court's decision.

[2] Because the insured in *Lopez* rejected any coverage, the *Lopez* court was analyzing Utah Code Ann. § 31A-22-305.3(2)(g), which provides that an insured "may reject [UIM] coverage by an express writing to the insurer . . . . on a form provided by the insurer that includes a reasonable explanation of the purpose of [UIM] coverage and when it would be applicable."

inform consumers of the purpose and applicability of UIM coverage" because it is incomplete without an understanding of other provisions in the statute, specifically the statutory definition of "underinsured motor vehicle." *Id.* at ¶¶ 13-14.  The court also noted that "there is nothing in the language or purpose of the UIM Statute indicating that the Legislature intended the statutory definition of UIM coverage to constitute the required reasonable explanation." *Id.* at ¶ 15.  The court concluded that "[b]oth the language and purpose of the UIM Statute make clear that the 'reasonable explanation' requirement is meant to ensure that consumers have sufficient information to allow them to make informed decisions regarding the selection of UIM coverage." *Id.* at ¶ 11.

The court further explained that the term "underinsured" is not a self-explanatory term and it needs to be defined and differentiated from the term "uninsured." *Id.* at ¶¶ 19-20.  In *Lopez* the waiver form repeatedly used "uninsured/underinsured" as if they had the same meaning.  *Id.* at ¶ 20.  The court reasoned that "without an explanation that differentiates between *underinsured* and *uninsured* coverage, a consumer might not understand why both forms of insurance are necessary, and could assume that protection against underinsured motorists is included in their uninsured motorist coverage, or vice versa." *Id.*

Finally, the *Lopez* court found that the insurer's waiver form did "not provide an adequate description of the benefits of UIM coverage and when those benefits apply" because it referred to "certain benefits" without elaborating "on what those 'certain benefits' entail." *Id.* at ¶ 21. "Instead, [the form] lumps the benefits of UIM coverage and uninsured motorist coverage together, making it difficult to understand when the respective benefits of each coverage apply." *Id.*  Although the court recognized that "the UIM Statute does not require that benefits be laid out

in a waiver as thoroughly as they would be in complete insurance policy documents, a reasonable explanation should nonetheless provide sufficient information about the benefits of coverage to allow consumers to make an informed decision." *Id.*

In this case, Salazar challenges whether she was adequately informed as to UIM coverage both through State Farm's Form and verbally in her interactions with her agent's assistant. In *Lopez*, the Utah Supreme Court did not address any verbal explanation requirement. The *Lopez* court's sole focus was on the adequacy of the insurer's waiver form. However, Salazar argues that language in the Utah Court of Appeals' decision supports her position that a verbal explanation is also necessary. The court of appeals' decision recognized that the UIM Statute was passed to benefit insureds and places a burden on the insurer to show that a reasonable explanation of the purposes of UIM coverage was provided. *Lopez v. United Automobile Ins. Co.*, 222 P.3d 1192, 1197 (Utah Ct. App. 2009). The court of appeals stated that "to meet that burden, the insurer must demonstrate that a meaningful offer of coverage was made and that the offer was sufficient to permit the insured to make an intelligent, informed decision on desired or desirable coverages." *Id.* "Thus, the insurer has an affirmative duty to notify the insured in a manner reasonably calculated to place necessary information in the insured's hands." *Id.* The court then determined that the definition on the waiver form provided to the insured did not give a reasonable explanation "using language that would be understood by an ordinary consumer." *Id.*

State Farm argues that neither the UIM Statute nor the *Lopez* decision requires it to provide a verbal explanation in addition to providing adequate information on the required waiver form. Utah's UIM Statute contains no language supporting the contention that a verbal

9

explanation is required. If this court ruled that there was such a requirement, it would be writing a new provision into the statute and abandoning established principles of statutory interpretation. The court also concludes that neither *Lopez* decision requires a verbal explanation. When Salazar refers to the court requiring a meaningful offer, the court was referring to whether the waiver form was a meaningful offer. Verbal discussions were not at issue in *Lopez*.

     Aside from being unsupported by the plain language of the statute, this case provides an example of how problematic a verbal explanation requirement would be. To guard against disputes as to an insured's selection or rejection of coverage, the Utah Legislature required a written acknowledgment signed by the insured. From a policy perspective, requiring insurers to prove that they gave an insured a verbal explanation would be unworkable. Requiring a verbal explanation would allow an insured to contest the validity of any UIM rejection or waiver simply by claiming that no verbal explanation was given or that the verbal explanation was confusing. As demonstrated by the testimony in this case, these policy changes are a daily occurrence in the industry. Poch took notes of the interaction but could not remember it specifically. Salazar also testified that she "could not recall being informed" of UIM coverage or its importance. The plain language of the UIM Statute protects against turning every case into a "he said-she said" by requiring a written acknowledgment signed by the insured. This requirement leaves no room to question or dispute what information or explanation the insured actually provided.

     The statutory requirement to sign a written acknowledgment is also consistent with the established principle that each person has a duty to read and understand the terms of a contract before he or she signs it. Under Utah law, "each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it. A party may not sign a

contract and thereafter assert ignorance or failure to read the contract as a defense." *John Call Eng'g Inc. v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987). Salazar argues that the law stating that each party has a burden to read and understand the terms of a contract before signing does not apply in this situation because it was not an arm's length transaction and *Lopez* places the burden on the insurer, not the insured. But "[i]t is also the majority rule that an insured is under a duty to read his application before signing it, and will be considered bound by a knowledge of the contents of his signed application. This is merely an application of fundamental contract law." *Theros v. Metropolitan Life Ins. Co.*, 407 P.2d 685, 688 (Utah 1965). Salazar's assertion that she had no duty to read the Form does not find support in case law. Utah law considers a first-party insurance contract to be a contractual one. While the UIM Statute and the *Lopez* decisions put the burden on the insurer to explain UIM coverage in a clear and understandable form, neither provides support for Salazar's argument that she is excused from the duty of reading what she signs.[3]

In addition, Salazar speaks and understands English well. She has a master's degree and is well-educated. This is not a case where the insured may be in a more difficult position than the ordinary consumer. Salazar has provided no specific factual basis to support her contention that she should be excused from being charged with knowledge of the UIM information provided in the Form.

---

[3] Moreover, Salazar's contention that Poch was only interested in obtaining a signature and did not provide any explanation is a disputed issue of fact. Poch's general practice was to provide an explanation and Salazar testified only that she could not recall that an explanation was given. Even if the court were to agree with Salazar's contention that a verbal explanation is required, summary judgment would not be appropriate on that issue. Both sides would need to present their version of the facts to a jury.

The issue before the court, therefore, is whether State Farm's Form adequately explains UIM coverage pursuant to the requirements of Utah's UIM Statute. State Farm argues that its Form meets the requirements and is markedly superior to the form at issue in *Lopez*, whereas Salazar contends the Form contains an inadequate description of UIM benefits.

State Farm's Form explains that Utah law requires UM and UIM coverage to equal the amount of liability coverage unless the insured elects otherwise. The Form then defines UM coverage and UIM coverage as follows:

> Uninsured motor vehicle coverage provides protection to you and others in your motor vehicle in an accident caused primarily by the fault of another party where the other party has no liability insurance to compensate for your bodily injuries. Underinsured motor vehicle coverage provides protection to you and others in your motor vehicle in an accident caused primarily by the fault of another party where the other party has liability insurance but not enough to compensate for your bodily injuries.

After these definitions, the Form provides an election section for UM coverage and then an election section for UIM coverage. For each type of coverage, the insured may reject any such coverage or choose between several different levels of coverage. The Form also identifies the cost for each level of coverage for each type of coverage.

State Farm's Form meets the requirements of Utah's UIM Statute in many respects. The Form is filed with the Department of Insurance, was provided by State Farm to Salazar, explains that it is required under Utah law if the consumer is purchasing UM and/or UIM coverage at a lesser amount than their liability coverage, defines UM and UIM coverage separately in easy-to-understand language, explains when each type of coverage would be needed, gives the consumer options to purchase different amounts of both types of coverage, and provides the cost associated with each level of coverage.

Unlike the form in *Lopez*, State Farm's Form clearly differentiates between UM and UIM coverage, defines each type of coverage, and has separate election sections for each type of coverage. In fact, in this case, Salazar chose different levels of coverage for each type of coverage which are consistent with the type of coverage. She selected greater coverage limits for uninsured motorists than she did for underinsured motorists. The Form does not use the language of only one provision of the UIM statute to define UIM coverage. Instead, it combines the statutory definitions of UIM coverage and underinsured motor vehicle in a way that explains the purpose of the coverage and under what circumstances it would apply.

Salazar argues that the language in State Farm's Form is deficient pursuant to *Lopez* because it failed to provide an adequate description of benefits. The form in *Lopez* stated that the insured was entitled to "certain benefits" whereas State Farm's Form states only that the UIM coverage provides "protection." Salazar contends that the word protection is extremely broad and could refer to non-monetary protection or protection unrelated to personal injuries. The court agrees that the use of financial compensation or even payment may give an ordinary insured a better understanding of the benefit he or she would receive. But the question is not whether the best term was used, the question is whether the term used is sufficient to inform the insured of the benefit he or she will receive.

When the term "protection" is viewed in the context of the whole form, which lists various amounts of coverage (or protection) the consumer can purchase, it is clear that protection is in the form of financial compensation as a result of an accident in which the other driver does not have enough insurance to pay for it. On the portion of the Form right before the UIM coverage amounts, it states: "I have been given the opportunity to purchase **underinsured** motor

13

vehicle coverage (Coverage W) with limits up to my bodily injury liability limits, and instead I select the lesser limits indicated below: . . . ."  An ordinary insured would understand that liability limits are paid in the form of financial compensation.  Between the definition of UIM, the sentence leading up to the selection of coverage explaining that you are selecting a certain level of financial compensation, and the list of different coverage limits available, the Form is sufficiently explains that the UIM coverage provides protection in the form of financial compensation.

The court's concern with the Form is whether it adequately explains what type of damages the financial compensation covers.  State Farm's definition of UIM coverage states that it is compensation for "bodily injuries."  The inadequate form at issue in *Lopez* stated that the coverage provided payment of benefits because of "bodily injury, sickness, disease or death."  Similarly, the UIM Statute defines UIM coverage as providing "coverage for a covered person who is legally entitled to recover damages from an owner or operator of an underinsured motor vehicle *because of bodily injury, sickness, disease, or death*."  Utah Code Ann. § 31A-22-305.3(2)(a)(i) (emphasis added).  The UIM Statute also defines an "underinsured motor vehicle" to mean a vehicle "covered under a liability policy at the time of an injury-causing occurrence, but which has insufficient liability coverage to compensate fully the injured party *for all special and general damages*."  *Id.* § 31A-22-305.3(1)(b)(i) (emphasis added).  The *Lopez* court states that the UIM's definition of underinsured motor vehicle "provides an essential foundation for the statutory definition of UIM coverage.  Without this additional information, the statutory definition of UIM coverage does not constitute a reasonable explanation."  2012 UT ¶ 14.

Based on the relevant definitions in the UIM Statute, the protection an insured receives

14

when purchasing UIM coverage is for bodily injury, sickness, disease, or death, as well as accompanying special and general damages. General damages include pain and suffering whereas special damages can include lost wages and diminished future earning capacity. The court does not believe that the use of only the term "bodily injury" adequately informs the ordinary insured of the amount of damages that could accrue in a serious accident. As written, the Form does not make clear that damages for anything other than bodily injury is covered. If the insured was informed that the coverage would pay for damages that could include bodily injury, death, pain and suffering, lost wages, and loss of future earning capacity, the insured would then have a better ability to calculate the amount of damages that he or she may need covered in the event of an accident caused by an underinsured motorist.

The court recognizes that while the *Lopez* court stated there must be some explanation of the benefits provided by UIM coverage, it also stated that a full description of benefits, as an insurer would do in a policy document, is not necessary. The court also recognizes that an unduly long list of possible damages or the use of terms unfamiliar to an ordinary consumer–such as general and special damages–would not be helpful. But, the court believes that to make a reasonably informed decision about the level of UIM coverage that may be necessary, an ordinary insured needs a more detailed description of what damages that money would cover than the term "bodily injury" provides. Accordingly, the court concludes that State Farm's Form does not meet the requirements of Utah's UIM Statute and the Utah Supreme Court's decision in *Lopez*.

Because the Form inadequately informed Salazar of the purpose of UIM coverage, Salazar is entitled to coverage up to the amount of her liability insurance limit of $100,000 per person/$300,000 per accident. Salazar has already received $35,000 in coverage between the

$25,000 policy limit of the underinsured motorist who caused the accident and the $10,000 UIM coverage she elected. The parties may proceed to a determination of the amount of Salazar's damages in excess of the $35,000 she has already received but within the $100,000 limit to which she is now entitled. The court is aware that the parties bifurcated the case between a determination of the coverage issue and the damages issue. Although the bifurcation would indicate that the parties have not conducted discovery on the damages issue, due to the number of changes to the scheduling order in this case, the court is unaware of whether the parties have engaged in discovery on the damages issue or whether a discovery period needs to be scheduled. The court currently has this case scheduled for a three-day jury trial beginning on November 5, 2012. The court requests the parties to inform the court within ten days of the date of this Order as to whether they are in a position to keep that trial date or need additional time.

## CONCLUSION

Based on the above reasoning, State Farm's Motion for Partial Summary Judgment is DENIED and Salazar's Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART as explained above.

DATED this 14th day of September, 2012.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge